# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

ROSLYN J. ANDERSON,        )
                                 )
        Plaintiff,           )     Case No. 6:11-cv-06377-SI
                                 )
          v.              )     **OPINION AND ORDER**
                                 )
**MICHAEL J. ASTRUE,**       )
Commissioner of Social Security,   )
                                 )
        Defendant.        )
_____)

Kathryn Tassinari, and Mark Manning, Harder, Wells, Baron & Manning, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and Roberta G. Bowie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 1301 Young Street, Suite A-702, Dallas, TX 75202. Attorneys for Defendant.

SIMON, District Judge.

Ms. Roslyn J. Anderson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits. Because the Commissioner's decision is not supported by substantial evidence, the decision is reversed and this case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## I.    BACKGROUND

### A.    The Application

Ms. Anderson protectively filed an application for Disability Insurance Benefits ("DIB") on May 21, 2008, alleging disability beginning on December 19, 2003. Tr. 109–12. She alleges disability due to severe brain injury, left eye blindness, knee and neck pain, diabetes, high blood pressure, high cholesterol, low thyroid, and glaucoma. Tr. 128. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 74–78, 83–86, 87. After an administrative hearing, held April 9, 2010, the ALJ found Ms. Anderson to be not disabled. Tr. 14–24, 29–71. The Appeals Council denied Ms. Anderson's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–4. Ms. Anderson now seeks judicial review of that decision.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

OPINION AND ORDER, Page 2

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially

dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following

series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R.
     § 404.1520(a)(4)(i). This activity is work involving significant mental or
     physical duties done or intended to be done for pay or profit. 20 C.F.R.
     § 404.1510. If the claimant is performing such work, she is not disabled
     within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the
     claimant is not performing substantial gainful activity, the analysis
     proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's
     regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in
     death, an impairment is "severe" if it significantly limits the claimant's
     physical or mental ability to do basic work activities. 20 C.F.R.
     § 404.1521(a). This impairment must have lasted or must be expected to
     last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If
     the claimant does not have a severe impairment, the analysis ends. 20
     C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the
     analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the
     impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
     then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the
     impairment does not meet or equal one or more of the listed impairments,
     the analysis proceeds beyond step three. At that point, the ALJ must
     evaluate medical and other relevant evidence to assess and determine the
     claimant's "residual functional capacity" ("RFC"). This is an assessment
     of work-related activities that the claimant may still perform on a regular
     and continuing basis, despite any limitations imposed by his or her
     impairments. 20 C.F.R. § 404.1520(e). After the ALJ determines the
     claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC
     assessment? If so, then the claimant is not disabled. 20 C.F.R.
     § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past
     relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience,
     is the claimant able to make an adjustment to other work that exists in

OPINION AND ORDER, Page 3

significant numbers in the national economy? If so, then the claimant is disabled. § 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.    The ALJ's Decision

The ALJ applied the sequential process in her May 14, 2010 decision. Tr. 14–24. At step one, the ALJ found that Ms. Anderson met the insured status requirement through December 31, 2013, and had not engaged in substantial gainful activity since December 19, 2003, the alleged onset date. Tr. 16. At step two, the ALJ found that Ms. Anderson's migraine headaches, loss of left eye, morbid obesity, fibromyalgia, Type II diabetes mellitus, mechanical low back pain, hypertrophic changes in the left and right acromioclavicular shoulder joints, and right hip bursitis were severe impairments. Tr. 17. At step three, the ALJ found that Ms. Anderson did not have an

OPINION AND ORDER, Page 4

impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 17–18.

The ALJ then determined that Ms. Anderson has the RFC to perform less than a full range of light work with the following restrictions: she must have the option to sit or stand at will and may be required to perform only occasional bilateral overhead reaching, crouching, crawling, kneeling, stooping, bending, and climbing of ramps or stairs. Tr. 18. Further, Ms. Anderson was restricted from climbing ladders, ropes, or scaffolds, and from tasks requiring excellent depth perception. *Id.* In reaching this conclusion, the ALJ considered Ms. Anderson's testimony, but found that it was not fully credible. Tr. 19–21. In addition, the ALJ reviewed the lay testimony of Ms. Tessa Siebert, a vocational counselor, and decided to give it little weight because it was based on selective records and on Ms. Anderson's self-reporting. Tr. 21. The ALJ gave significant weight to the opinions of examining physician Dr. McConochie and the state consultative physicians. Tr. 21–22.

At step four, the ALJ found that Ms. Anderson was unable to perform her past relevant work. Tr. 22. The ALJ called a vocational expert ("VE") to testify at the hearing. Tr. 60–70. The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated in Ms. Anderson's RFC; the VE responded that a person with those restrictions would be able to perform the work of an office clerk, an appointment maker, and a data examination clerk. Tr. 23. Based on the VE's testimony, the ALJ found that Ms. Anderson was capable of performing "jobs that exist in significant numbers in the national economy" through the date of the ALJ's decision. Tr. 23–24 The ALJ therefore concluded that Ms. Anderson was not disabled. Tr. 24.

OPINION AND ORDER, Page 5

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,*

554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th

Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

1982). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a

reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation

marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground

upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d

at 1226–26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## III.    DISCUSSION

Ms. Anderson argues that the ALJ erred by:  (1) failing to a consider the opinion of

Dr. Herring, a treating neurologist; (2) improperly finding her subjective symptom testimony not

credible; (3) rejecting the lay testimony of Ms. Siebert, a vocational counselor; and (4) relying on

VE testimony that was given in response to a hypothetical that was not based on substantial

evidence.

**A.     Dr. Herring's Opinion**

Ms. Anderson argues that the ALJ erred by omitting any reference to the May 21, 2008

opinion of Dr. Herring, a treating neurologist. An ALJ must determine the weight to give each

source of evidence. 20 C.F.R. § 404.1527(d), (f). Opinions from "acceptable medical sources"

may generally be accorded more weight than those from "other sources." *Gomez v. Chater*, 74

F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. § 404.1513. An ALJ may wholly or partially discount

the opinion of any source, but the regulations and Ninth Circuit case law establish specific

standards that an ALJ must apply in order to do so. *See* 20 C.F.R. § 404.1527 (standards for

evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830–33 (9th Cir. 1995) (standards

for evaluating acceptable medical sources); *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir.

1993) (standards for evaluating other sources). An ALJ may only reject the opinion of a doctor

who has examined a claimant in favor of the differing opinion of a non-examining doctor if the

ALJ "gives specific, legitimate reasons for doing so, and those reasons are supported by

substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Dr. Herring prepared an opinion letter, dated May 21, 2008, that recited Ms. Anderson's

impairments and concluded that she "continues to deal with chronic migraine headache disorder,

which is at times disabling and definitely affects her ability to stay gainfully employed." Tr. 375.

Dr. Herring opined that Ms. Anderson's chronic headaches have progressed into a daily

condition; as such, "her medical problems [have] evolved to a point where she is disabled." *Id.* In

addition to the opinion letter, Dr. Herring's treatment notes from two patient visits, dated February 4, 2008, and April 14, 2008, are in the record. Tr. 223–30. The ALJ discussed Dr. Herring's treatment notes, using them as a record of the frequency and severity of Ms. Anderson's migraine headaches, but the ALJ did not discuss the opinion letter. Tr. 20.

The Commissioner argues that the ALJ's statement, "I have . . . considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527," satisfies any duty to consider Dr. Herring's opinion letter. Def.'s Br. at 5–6. The regulations require that an ALJ "evaluate every medical opinion . . . receive[d]." 20 C.F.R. § 404.1527(c). Dr. Herring transmitted his opinion to the ALJ before the hearing, and there is no dispute that it was properly before the ALJ. *See* Tr. 28, 32. The opinion was given by a treating source and even if it was contradicted, on which the Court expresses no opinion, the ALJ may reject it only for "specific and legitimate reasons supported by substantial evidence in the record." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ "cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 n.3 (9th Cir. 1988)). Further, a general citation to the regulations without further explanation is legally insufficient because it prevents the Court from conducting a meaningful review of the ALJ's reasoning for accepting or rejecting a medical opinion to ensure that those reasons are both specific and legitimate. *Cf. Bray*, 554 F.3d at 1226 ("meaningful review of an administrative decision requires access to the facts and *reasons* supporting that decision") (emphasis added).

OPINION AND ORDER, Page 8

The Commissioner also argues that the ALJ's implicit rejection of Dr. Herring's opinion is permissible because the opinion letter touches on "issues reserved for the Commissioner." Def.'s Br. at 9 (citing 20 C.F.R. § 404.1527(e)(1)). Although Dr. Herring's letter does offer an opinion as to the ultimate issue of disability, it also includes diagnoses and functional limitations, which should have been explicitly considered by the ALJ. *See, e.g.*, Tr. 375 ("She, in fact, has evolved into a pattern of chronic daily headaches."). Further, an ALJ may not reject an opinion without comment simply because it discusses the ultimate issue of disability. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[T]he ALJ may reject the opinion of a . . . physician . . . if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Finally, to the extent that the Commissioner now argues that the ALJ's implicit rejection of Dr. Herring's opinion was appropriate because the opinion was inconsistent with his treatment notes, the Court does not reach the issue. The Court may only affirm the disability decision on grounds originally offered by the Commissioner; post-hoc reasoning cannot support an otherwise deficient decision. *See Bray*, 554 F.3d at 1225–26 (citing *Chenery Corp.*, 332 U.S. at 196) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

In sum, the Court cannot meaningfully review the ALJ's evaluation of Dr. Herring's opinion because the ALJ did not address it in the ALJ's decision.  That decision therefore is reversed.

**B.    Ms. Anderson's Credibility**

Ms. Anderson also argues that the ALJ did not provide clear and convincing reasons for finding her not credible; thus, she argues, the ALJ improperly discounted Ms. Anderson's testimony of her subjective symptoms. Pl.'s Br. at 14–17. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (*en banc*)).

OPINION AND ORDER, Page 10

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate or aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

The Ninth Circuit also has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Ms. Anderson testified that she is incapable of lifting more than twenty pounds and that she experiences some difficulty grasping. Tr. 40–41. She reported that she is able to sit for thirty minutes, stand between thirty and forty-five minutes, and walk for thirty minutes. Tr. 40. Ms. Anderson's migraine headaches cause her significant difficulty and her prior employer offered several accommodations. Tr. 36–37. These migraines occur approximately three to four

times per week, and the duration can be as long as three to four days. Tr. 47–48. At least once a

week, Ms. Anderson suffers a migraine that prevents her from leaving her bed. Tr. 48.

Ms. Anderson can occasionally work through a migraine, but she is able to do so only 25 percent

of the time. Tr. 49.

   The ALJ, applying the first step of the credibility framework, found "that the claimant's

medically determinable impairments could reasonably be expected to cause the alleged

symptoms." Tr. 21. In applying the second step, however, the ALJ found that "the claimant's

statements concerning intensity, persistence, and limiting effects of these symptoms are not

credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* The ALJ

offered several reasons in support of her finding:  (1) Ms. Anderson demonstrated non-

compliance with recommended lifestyle changes to better manage her diabetes; (2) she offered

inconsistent and uncorroborated testimony regarding her migraine headaches; (3) her depression

was effectively controlled by conservative treatment; and (4) Ms. Anderson had concurrently

applied for unemployment benefits. Tr. 19–21.

   **1.**  **Diabetes Non-compliance**

   The ALJ found that Ms. Anderson's testimony about the limiting effects of her diabetes

was not credible because she did not regularly take her diabetes medication and she did not

comply with recommendations about her diet and level of physical activity. Tr. 19. An ALJ may

consider a claimant's failure to follow a prescribed course of treatment when weighing a

claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008)

(quoting *Smolen*, 80 F.3d at 1284) (The ALJ may consider "unexplained or inadequately

explained failure . . . to follow a prescribed course of treatment.") (internal quotations omitted); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

The ALJ noted that Ms. Anderson was advised by Ms. Martha Griffith, a physician's assistant, to engage in "stretching exercises" and to continue weight loss efforts and walking to help with her diabetes and fibromyalgia. Tr. 19 (citing Tr. 367). Further, the ALJ noted that Ms. Anderson's glucose readings indicated non-compliance with a diet intended to mitigate the effects of diabetes. Tr. 19 (citing Tr. 304 (fasting glucose: 243 [mg/dL]); Tr. 332 (random glucose: 138 [mg/dL]); Tr. 366 (random glucose: 171 [mg/dL])).[1] The effects of her non-compliance with an appropriate diet were further compounded by her irregular use of medication prescribed to control her diabetes. Tr. 19 (citing Tr. 304). Thus, the ALJ concluded that Ms. Anderson's testimony that she must lie down frequently or for extended periods of time was not credible. *Id.*

The ALJ's conclusion arises from the juxtaposition between Ms. Anderson's physicians' advice to stay active and her own testimony that she spends four to five hours per day in bed. Tr. 42. Although Ms. Anderson did report to Ms. Griffith, a physician's assistant, that she was not regularly taking her diabetes medication, the non-compliance was caused by vomiting and nausea secondary to her migraine headaches. Tr. 304, 306. This case is therefore unlike *Tommasetti*, where the ALJ permissibly inferred that the claimant's pain was "not as all-disabling as he reported" because the claimant ceased using "effective medication due to mild side effects." *Tommasetti*, 533 F.3d at 1039. Instead, Ms. Anderson attempted to take her

---

[1] The general glycemic goals for a patient diagnosed with diabetes are between 80 and120 mg/dL during the day and between 100 and 140 mg/dL before bed. *See* Merck & Co., *The Merck Manual of Diagnosis and Therapy* 872 (19th ed. 2011).

medication and was unsuccessful due to nausea brought on by an independent condition. Vomiting is not a "mild side effect," and more significantly, Ms. Anderson did not voluntarily cease her medication, but instead she was unable physically to ingest it. Further, during the appointment with Ms. Griffith when Ms. Anderson recorded a blood glucose level of 243 mg/dL, Ms. Griffith gave Ms. Anderson a prescription for anti-nausea medication. Tr. 305. During a follow-up visit, Ms. Anderson's blood glucose level had dropped to 139 mg/dL and her treatment provider noted that Ms. Anderson's diabetes "appear[s] well controlled." Tr. 297.

Given that the fluctuations in Ms. Anderson's glucose levels appear to be accounted for by her excusable intermittent use of diabetes medication, it does not follow that she has not demonstrated compliance with nutritional and weight-loss goals. Tr. 19. Indeed, Ms. Anderson's uncontroverted testimony is that she exercises four times per week and has only occasional lapses in her diet plan. Tr. 39–40.[2] Thus, the ALJ's reasoning is not supported by substantial evidence in the record and is therefore reversed.

### 2. Migraine Headaches

The ALJ found Ms. Hawthorne's testimony regarding the debilitating effects of her migraine headaches to be not credible because it was internally inconsistent and it was not corroborated. Tr. 19–20. In assessing a claimant's credibility, the ALJ "may rely on ordinary techniques of credibility evaluation." *Tommasetti*, 533 F.3d at 1040 (citing *Smolen*, 80 F.3d

---

[2] The Merck Manual counsels, "[p]hysical activity should increase incrementally to whatever level a patient can tolerate." *Merck*, *supra* note 1, at 872–73. Ms. Anderson reports that she spends several hours each day in a prone position due to fatigue, back pain, and foot pain. Tr. 42. Although increased physical activity may be desirable, periods of inactivity are not necessarily "detrimental to the improvement of [Ms. Anderson's] impairments," as the ALJ suggests. Tr. 19.

at 1284). As such, the ALJ may consider "inconsistencies either in [the claimant's] testimony or between his [or her] testimony and his [or her] conduct." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Based on Dr. Herring's treatment, the ALJ found that Ms. Anderson's migraine headaches did not become as severe as she described in her testimony until April 2008. Tr. 20 (citing Tr. 223). Further, the severity of her headaches was compounded by Ms. Anderson's use of prescribed narcotic pain medication. *Id.* The ALJ also questioned Ms. Anderson's testimony that she was frequently absent from work, noting that the record was left open for 30 days to allow for the submission of work records, which were not produced. *Id.* As such, the ALJ considered Ms. Anderson's successful employment from 2003 through 2008 as reflecting negatively on her credibility. Tr. 20–21. Finally, the ALJ noted that Ms. Anderson testified that 50 percent of her headaches responded to medication within one hour. Tr. 20.

On September 28, 2010, Ms. Anderson's attorney produced to the Appeals Council the work records referenced by the ALJ. Tr. 377. The Appeals Council considered the new evidence, but declined to review the ALJ's decision. Tr. 1, 4. The evidence submitted consists of records from Ms. Anderson's employment from December 2003 through April 2008. Tr. 377.  In addition to medical records submitted to Ms. Anderson's former employer, including a FMLA certification form, the new evidence includes detailed notes of each instance that Ms. Anderson arrived late or left early from work or missed work entirely. *See generally* Tr. 377–712. Although this evidence was not presented to the ALJ, it has become a part of the administrative record; thus, the Court must consider it when reviewing the Commissioner's final decision for substantial evidence. *See Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th

OPINION AND ORDER, Page 15

Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") (citing *Tackett*, 180 F.3d at 1097–98).

The ALJ cited Ms. Anderson's lack of corroborating documentation from her former employer, which closed its operations in 2008, as a reason to discount Ms. Anderson's testimony regarding the debilitating effects of her migraine headaches. Tr. 20. The ALJ also noted that the frequency of Ms. Anderson's headaches was "not well documented." *Id.*; *see also* Tr. 38 (The ALJ "will hold the record open for 30 days for verification that there were . . . absences above the average number of absences [tolerable]."). The ALJ's findings are erroneous, although that is not the fault of the ALJ.  Nevertheless, the evidence submitted to the Appeals Council substantially corroborates Ms. Anderson's testimony. From January 1, 2008, through April 23, 2008, when her former employer's business ceased operations, she had accumulated approximately 78 hours of missed work due to migraine headaches. *See* Tr. 36, 391–416 (recording eight absences, three instances where Ms. Anderson left work early, and three instances where she arrived late due to migraine symptoms). Further, during 2007, Ms. Anderson missed 521 hours of work due to migraine headaches, an average of approximately ten hours per week. *See* Tr. 417–530 (recording 34 absences, 19 instances where Ms. Anderson left work early, and 44 instances where she arrived late due to migraine symptoms). Beyond that, there are 180 additional pages of records detailing the years 2003 through 2006 that show a substantial amount of additional missed work due to migraine symptoms. *See* Tr. 531–712. Considered as a

OPINION AND ORDER, Page 16

whole, the new evidence demonstrates that the "success" of Ms. Anderson's employment was only possible through the substantial accommodations offered by her employer.

The ALJ also found that the medication that Ms. Anderson takes at the onset of a migraine headache is effective at combatting the symptoms approximately 50% of the time. Tr. 20. Ms. Anderson went on to testify, however, that the medication leaves her "very tired." Tr. 54–55. Thus, even if the medication is effective half of the time, the ALJ erred by failing to consider the medication's side effects, which deleteriously affects Ms. Anderson's ability to work. *See Varney v. Sec'y Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir.), *on reh'g*, 859 F.2d 1396 (9th Cir. 1988) (citations omitted) ("[I]f the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision."). Moreover, Ms. Anderson's new evidence submitted to the Appeals Council may be probative as to this issue and should be considered. *See, e.g.*, Tr. 411 (leaving work early due to uncontrolled migraine).

In sum, the new evidence submitted to the Appeals Council substantially contradicts the conclusions drawn by the ALJ regarding the veracity of Ms. Anderson's subjective symptom testimony about her migraine headaches. Thus, the ALJ's rejection of Ms. Anderson's testimony regarding her migraine headaches is not based on substantial evidence as the record has now been supplemented.  The ALJ's conclusions on this issue therefore are reversed.

### 3.    Conservative Treatment of Depression

The ALJ found that Ms. Anderson's depression was conservatively treated and as such, it was effectively controlled by her use of medication. Tr. 20. An ALJ may properly consider evidence of conservative treatment in discounting testimony regarding the severity of symptoms.

OPINION AND ORDER, Page 17

*Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007); *Phillips v. Astrue*, CV-10-06367-AC,

2012 WL 1232005, at \*4 (D. Or. Feb. 2, 2012), *adopted by* 2012 WL 1232419 (D. Or. Apr. 11,

2012) (conservative treatment was "a wrist splint for work and rest and Tylenol"). *Cf. Meanel v.

Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where

petitioner's "claim that she experienced pain approaching the highest level imaginable was

inconsistent with the 'minimal, conservative treatment' that she received") (quotation omitted).

Although Ms. Anderson argues that the ALJ was incorrect, she effectively concedes the issue

because she notes she "did not stop taking Paxil." Pl.'s Br. at 16; *see also* Tr. 304–05

(recommending Ms. Anderson restart Paxil, so she does "not feel the repercussion of her

discontinuation").

An ALJ's finding that a symptom is effectively controlled with medication is a clear and

convincing reason to find a claimant's testimony regarding that symptom not credible. *See

Elletson v. Astrue*, 319 F. App'x 621, 622 (9th Cir. 2009) ("The ALJ presented specific, clear,

and convincing reasons for rejecting [the claimant's] testimony regarding the severity of her

symptoms, noting that her medical records indicated her condition was well controlled with

medication."). Therefore, the ALJ offered a clear and convincing reason supported by substantial

evidence for discounting Ms. Anderson's testimony regarding her depression; the finding is

therefore affirmed.[3]

---

[3] Further, an ALJ must only include limitations in the RFC that are supported by
substantial evidence in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir.
2001). Unlike the evidence of Ms. Anderson's migraine headaches, Ms. Anderson does not offer
any evidence of functional limitations resulting from depression. *See generally* Tr. 377–712.
Thus, the ALJ's finding is supported by substantial evidence.

OPINION AND ORDER, Page 18

####     4.        Employment History and Application for Unemployment Benefits

The ALJ relied on Ms. Anderson's testimony that she filed for disability benefits concurrently with filing for unemployment benefits in finding her generally not credible. Tr. 21. In Oregon, to be eligible for unemployment benefits the claimant must, among other things, be "able to work . . . available for work, and . . . actively seeking and unable to obtain suitable work." Or. Rev. Stat. § 657.155(c). The Ninth Circuit has recognized, however, that an ALJ's reliance on a claimant's receipt of unemployment benefits is improper unless the record establishes whether the claimant held himself or herself out as being available for full-time work. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Ms. Anderson testified that she would have been willing to try to work full-time. Tr. 35. The ALJ acknowledged, however, that her receipt of unemployment benefits may have been motived by financial necessity. Tr. 21. Regardless, given the new evidence in the record, which casts doubt on Ms. Anderson's ability to work full-time without significant accommodations, the ALJ's finding along is not a clear and convincing reason to discount Ms. Anderson's subjective symptom testimony.

In sum, the ALJ's negative credibility finding, except where noted, is not based on substantial evidence; it is therefore reversed. The ALJ's consideration of Ms. Anderson's depression, however, is free of legal error and is supported by substantial evidence; it is therefore affirmed.

#### C.    Ms. Siebert's Opinion

Ms. Hawthorne argues that the ALJ provided legally insufficient reasons for rejecting the opinion of Ms. Siebert, a vocational counselor. Pl.'s Br. 17–18. An ALJ must determine the

weight to give each source of evidence. 20 C.F.R. § 404.1527(d), (f). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources." *Gomez*, 74 F.3d at 970; 20 C.F.R. § 404.1513. The ALJ may reject the opinion of an "other source" only by offering specific, germane reasons for doing so. *See Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Ms. Siebert wrote an opinion letter dated March 2010 that offered comprehensive reasons as to why Ms. Anderson was designated "Priority One – Most Severe" by the state's Vocational Rehabilitation Services. *See* Tr. 178–79. The letter lists Ms. Anderson's qualifying health conditions, including memory impairment, major depressive disorder, and uncontrolled migraine headaches, as well as how those conditions limit her ability to work. *Id.* Although Ms. Siebert acknowledged Ms. Anderson's employment with Goodwill of South Lane County, Ms. Siebert emphasized that the position is only ten hours per week and offers Ms. Anderson substantial accommodations. *Id.* Ultimately, Ms. Siebert concluded that Ms. Anderson is unable to work more than ten hours per week due to her qualifying conditions. Tr. 179.

The ALJ considered the opinion of Ms. Siebert, but rejected it because it was based on a non-representative subset of the medical evidence and Ms. Anderson's self-reporting. Tr. 21. The ALJ also gave Ms. Siebert's opinion little weight because it was based on an outdated neurological assessment when a more recent and representative assessment was available. *Id.*

Further, the ALJ found that Ms. Siebert's opinion was inconsistent with Ms. Anderson's "successful employment through 2008." *Id.*

As Ms. Anderson argues, the relevant Social Security Ruling states that "[i]nformation concerning an individual's performance in any work setting (including sheltered work and volunteer or competitive work) . . . may be pertinent in assessing the individual's ability to function in a competitive work environment." SSR 85-16, *available at* 1985 WL 56855. This ruling does not, however, require the ALJ to do more than offer "a specific and germane reason" for rejecting the testimony of a vocational counselor. *See Carter v. Astrue*, 472 F. App'x 550, 553 (9th Cir. 2012).

The ALJ reasoned that Ms. Anderson's employment through 2008 was inconsistent with Ms. Siebert's conclusion that Ms. Anderson was limited to working ten hours per week. Tr. 21. This conclusion, however, is not supported by substantial evidence in light of the new evidence submitted to the Appeals Council. *See generally* 377–712. Although Ms. Anderson was employed through 2008, there is overwhelming evidence that she received substantial accommodations from her employer at the request of Dr. Herring. *See, e.g.*, Tr. 385–86, 390; Tr. 417–530 (recording 34 absences, 19 instances where Ms. Anderson left work early, and 44 instances where she arrived late due to migraine symptoms in 2007). Thus, Ms. Siebert's opinion is not necessarily inconsistent with Ms. Anderson's employment through 2008.

The ALJ also found that Ms. Siebert's opinion was inconsistent with the testimony of Dr. McConochie, who opined that Ms. Anderson "does not appear to have any major psychological limitations to work activity." Tr. 21 (citing Tr. 246). Although inconsistency with the medical evidence may be a germane reason to discount a lay opinion, Ms. Siebert's opinion

is not inconsistent with Dr. McConochie's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Dr. McConochie opined that Ms. Anderson did not suffer any psychological barriers to full-time employment; however, Dr. McConochie's own opinion demarcates psychological conditions, Axis I and II conditions, from physical conditions, Axis III.[4] *See* Tr. 245. Dr. McConochie concluded that Ms. Anderson suffered only one psychological condition, bereavement, on Axis I, but he also noted "[m]igraine headaches by client report" on Axis III condition. *Id.* Moreover, Dr. McConochie incorrectly noted that Ms. Anderson was employed successfully through 2008, which is inconsistent with the new evidence in the record that was not available to him. Tr. 244–45, 377–712.

In sum, the new evidence submitted to the Appeals Council demonstrates that the ALJ's consideration of Ms. Siebert's lay opinion is not based on substantial evidence; it is therefore reversed.

**D.     Ms. Anderson's RFC and the VE's Testimony**

Ms. Anderson argues that the ALJ's RFC finding was erroneous and not based on substantial evidence. The RFC is defined as the most that a claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ evaluates "all of the relevant medical and other evidence," as well as a claimant's testimony, in making this assessment. SSR 96-8p, *available at* 1996 WL 374184; 20 C.F.R. § 404.1545(a)(1);

---

[4] This is consistent with the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition ("DSM-IV"), which uses a multiaxial system to facilitate mental health evaluation. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 27–30 (4th ed. 2000) ("DSM–IV") (differentiating between Axis I and II, which relate to clinical disorders, and Axis III, which relates to "current general medical conditions").

*see also Robbins*, 466 F.3d at 883. Limitations supported by substantial evidence in the record must be incorporated into the RFC. *See Osenbrock*, 240 F.3d at 1164–65.

As discussed above, the new evidence in the record upsets the ALJ's conclusions with regard to Ms. Anderson's credibility and the lay opinion of Ms. Siebert. *See supra* pp. 10–22. Further, the ALJ erroneously failed to consider the opinion of Dr. Herring, a treating neurologist. *See supra* pp. 7–10. Thus, the ALJ's RFC is deficient because it did not include Ms. Anderson's functional limitations that are supported by the late-supplied, but erroneously-excluded, evidence; it is therefore reversed.

Ms. Hawthorne next argues that the ALJ erred by presenting a hypothetical to the VE that did not include all of her functional limitations. Pl.'s Br. at 28–29. The hypothetical that an ALJ poses to a VE must contain "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217. As the Court previously explained, the ALJ did not incorporate all of the limitations supported by substantial evidence in the record into Ms. Anderson's RFC. *See supra* pp. 22–23. Thus, the ALJ's step five determination is not supported by substantial evidence. *See Robbins*, 466 F.3d at 886 ("[I]f the ignored testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ."). The finding is therefore reversed.

## E.    Remand

Ms. Anderson argues that if the erroneously considered evidence is credited as true, the proper remedy is a remand for the immediate payment of benefits. Pl.'s Reply at 8–9. The Court may, in its discretion, order an immediate payment of benefits. In "Social Security Act cases

OPINION AND ORDER, Page 23

Congress has granted district courts the additional power to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit has set forth a three-part test for determining whether to remand a case for further proceedings or for the immediate award of benefits. The immediate payment of benefits is appropriate where:  (1) the ALJ failed to provide legally sufficient reasons for rejecting the claimant's testimony; (2) no outstanding issues remain for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such testimony credited. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

As discussed above, Ms. Anderson submitted new evidence to the Appeals Council, which the ALJ did not have the opportunity to consider. In light of the new evidence, which now must be considered, the ALJ's findings with regard to Ms. Anderson's credibility and the lay opinion of Ms. Siebert are not supported by substantial evidence. Further, the ALJ erroneously failed to consider the opinion of Dr. Herring. Because the record needs further development, however, the Court concludes that there are outstanding issues that must be resolved before a determination of disability can be made. The ALJ should have the benefit of reconsidering her findings with regard to the new evidence in the record.[5] Further, if the ALJ concludes that the new evidence supports a determination of disability, there is still a question about the correct

---

[5] Although the court may reverse an ALJ's decision and order immediate payment of benefits if "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication," that is not the case here. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). The ALJ did not have the benefit of Ms. Anderson's corroborating evidence when making her determination; thus, the policy considerations articulated in *Benecke* do not override the need for the Commissioner to consider issues or evidence that had not been previously addressed. *See id.* (citing *INS v. Ventura*, 537 U.S. 12, 13 (2002) (*per curiam*)) ("[R]emand [i]s required to allow [the] agency to consider in the first instance an issue that it had not previously addressed.").

date of onset. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (an ALJ need not consider SSR 83-20, unless a determination of disability is found).[6]

## IV.    CONCLUSION

The Commissioner's decision that Ms. Anderson is not disabled is REVERSED and this case is REMANDED for further proceedings consistent with this opinion. On remand, the ALJ shall consider the opinion of treating physician Dr. Herring and, in light of the new evidence submitted by Ms. Anderson, shall reconsider Ms. Anderson's credibility, the lay opinion of Ms. Siebert, and, if necessary, the RFC and the VE's testimony.

DATED this 3rd day of January, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[6] In the ALJ's discussion of Ms. Anderson's testimony regarding her migraine headaches, the ALJ appeared to suggest that the frequency and intensity of those headaches became more severe beginning in April 2008. Tr. 20 ("However, the objective medical evidence indicates that Ms. Anderson's migraines have been of that frequency and duration only since April 2008."). Further, although the ALJ reported Ms. Anderson's onset date as December 19, 2003, there is a letter in the record from Ms. Anderson's attorney amending her onset date to April 29, 2008. Tr. 376. On remand, the effect of all of this evidence, if applicable, should be addressed.

OPINION AND ORDER, Page 25